**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RONALD WAYNE LEE,** | ) | |
| **ID # 1290650,** | ) | |
| Movant, | ) | **No. 3:12-CV-3936-L-BH** |
| vs. | ) | **No. 3:11-CR-0046-L (01)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, filed September 28, 2012 (doc. 1), should be **DENIED** with prejudice.

**I.  BACKGROUND**

Ronald Wayne Lee (Movant) challenges his federal conviction and sentence in Cause No. 3:11-CR-046-L. The respondent is the United States of America (Government).

**A.     Plea and Sentencing**

Movant was charged by indictment with bank robbery in violation of 18 U.S.C. § 2114(a). (*See* Indictment). On June 7, 2011, he pled guilty without a plea agreement. (*See* docs. 21, 22).[1] He also signed and filed a factual resume admitting facts sufficient to support his plea. (doc. 17). The factual resume states that Movant discussed the Federal Sentencing Guidelines, 18 U.S.C. § 3553(a), the statutory penalties, and the facts of the case with his attorney, and that he understood that the district court would impose sentence after considering the applicable statutes, the guidelines, and the factors included in § 3553(a). It also states that Movant understood that the guidelines and

---

[1]   All document numbers refer to the docket number assigned in the underlying criminal action.

§ 3553(a) are not binding, that he could be sentenced to the maximum twenty-year sentence, and that he would not be able to withdraw his plea because his sentence was higher than he expected, so long as it did not exceed the statutory maximum. (doc. 17 at 1-2, 4).

During his rearraignment hearing, Movant acknowledged under oath the rights he was waiving by pleading guilty, including the right to a jury trial, the right to confront and cross-examine witnesses against him, the right to court-appointed counsel during trial, and the right to require the Government to prove his guilt beyond a reasonable doubt. (doc. 40 at 7-8).  He also acknowledged that he understood that he should not rely on any statements or promises from anyone, including his attorney, as to what punishment he would receive, because the punishment would be decided by the judge.  Movant affirmed that no-one had made any promise or assurance to him of any kind in an effort to have him plead guilty. *Id*. at 14.  He also affirmed that he had discussed with his attorney how the sentencing guidelines applied in his case, but he understood that the guidelines are advisory, that the judge is not bound by stipulated facts and may take into account facts that were not stipulated in deciding punishment, and that he would not decide punishment until after a presentence report (PSR) was prepared and there was an opportunity to object to the PSR. *Id*. at 9-11.  Finally, Movant swore under oath that he was pleading guilty because he was guilty, that he read the factual resume before he signed it and that it contained true facts, and that he understood that the maximum sentence for his offense was twenty years. *Id*. at 15-16.

After he pled guilty and the PSR was prepared, but before he was sentenced, Movant signed a sentencing agreement in which he waived the right to contest his conviction and sentence in any direct appeal or collateral proceeding, except to bring a direct appeal challenging his sentence as either exceeding the statutory maximum punishment or having been calculated by way of an

2

arithmetic error or to challenge the voluntariness of his plea or waiver and to bring a claim of ineffective assistance of counsel. (doc. 28). In exchange, the Government would move for a one-level decrease in his sentencing guideline. (*Id.*)

The probation office prepared a PSR and an addendum to the PSR that calculated Movant's total offense level, after a three-level downward departure for acceptance of responsibility, as 21, resulting in a guideline range of imprisonment from 77 to 96 months. At the sentencing hearing on September 19, 2011, the court adopted the PSR and sentenced Movant to 96 months' imprisonment, to be served consecutive to any sentence imposed as a result of pending Oklahoma state charges and a pending Texas parole revocation, to be followed by two years supervised release, and it entered judgment. (docs. 34, 35). Movant did not appeal his conviction and sentence.

**B.    Substantive Claims**

Movant asserts the following claims:

(1) his guilty plea was involuntary because his trial attorney advised him that the sentence he received would run concurrent to his Texas parole violation sentence, rather than consecutive to it (Mot. at 7, Mem. at 2); and

(2) his trial attorney was ineffective by erroneously advising him that he would serve concurrent sentences in federal custody and this advice caused him to waive his right to appeal (Mem. at 8-10).

The Government filed a response brief on January 17, 2013. (*See* Resp. Opp'n Mot. ("Resp.")). Movant filed a reply on February 15, 2013.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.

1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. VOLUNTARINESS OF PLEA

Movant first asserts that his plea was involuntary because his trial attorney was ineffective by promising him that he would serve his federal sentence concurrently with the sentence for a pending state parole revocation and would serve both sentences in federal custody if he pled guilty.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v.*

*United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Although a guilty plea ordinarily waives all nonjurisdictional defects, including ineffective assistance claims, a petitioner may raise ineffective assistance to the extent that it affected the voluntariness of his plea. *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (quoting *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.1983) ("once a guilty plea has been entered, all

5

nonjurisdictional defects in the proceedings against a defendant are waived," and the waiver "includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.")). To establish ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that there is a reasonable probability that but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Cavitt*, 550 F.3d at 441; *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996). When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. A court need not address both components of this inquiry if the petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697.

Movant claims that his attorney's erroneous advice that his federal and state sentences would be served concurrently in federal custody prejudiced him because he would not have pled guilty but for this promise. (Mot. at 7; Mem. at 2-3). His assertion that he pled guilty based on counsel's promise is contrary to both the signed factual resume and his sworn testimony at his rearraignment hearing. He testified that he had discussed the federal sentencing guidelines and § 3553(a) with his attorney, that he understood that he should not rely on any promises or assurances by anyone (including his attorney) as to what his sentence would be, that he understood that the judge was the only person who would decide his sentence, and that no one had made any promises to him in an effort to get him to plead guilty.

"Ordinarily a defendant will not be heard to refute his testimony given under oath." *United*

*States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.' *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Courts also presume the regularity of court documents and accord them "great weight." *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of :1) the exact terms of the alleged promise; 2) exactly when, where, and by whom the promise was made; and 3) the precise identity of an eyewitness to the promise. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), *citing Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.* However, when the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," the Court may dispense with his allegations without an evidentiary hearing. *Id.*

Here, Movant has not stated specifically where and when counsel made the promise that allegedly caused him to plead guilty. The only specific date he provides is after he had already pled

7

guilty. At that time, he claims counsel "once against assured [him] that the court would run the sentences concurrent and that [he] would remain in Federal custody to serve his sentence." (Mem. at 6-7). Otherwise, Movant states generally that counsel made this promise several times. (Reply at 9). His sole independent evidence is a sworn statement from his brother stating that he spoke with Movant often and with the attorney on a "couple of occasions". Both told him that counsel "could get" the sentences to run concurrent "without a problem", and that counsel "was sure" that Movant would remain in federal custody. (Mem. Ex. B). The statement does not reflect that the brother was an eyewitness to any statements made by counsel to Movant directly.

      Assuming that the brother is a reliable third party, his affidavit does not meet the standard for granting an evidentiary hearing on this issue, much less relief. First, it does not state when and where defense counsel made the promise that Movant would receive concurrent sentences, or that he was an actual eyewitness to a promise made by defense counsel to Movant. *See United States v. Merrill*, 340 Fed. App'x 976, 978-79 (5th Cir. Aug. 17, 2009) (holding that an affidavit from a girlfriend does not provide "independent indicia of the likely merit of Merrill's claims" because it did not describe with any specificity where or when counsel made the alleged promise, and "more fatally" did not indicate that the girlfriend was in fact an eyewitness to any promise made directly to Merrill); *United States v. Medrano*, 4:12-CV-741-A, 2013 WL 1092813, *4 (N.D. Tex. Mar. 15, 2013) (holding that "sparse" declarations by Medrano's wife that counsel told her that Medrano faced an 8-10 year sentence, and by their daughter that she heard counsel make this statement to her mother, were not sufficient to overcome the overwhelming evidence that Medrano knew he faced a longer sentence and that no one had made promises to induce him to plead guilty). Here, the affidavit also does not state that the brother witnessed a definite promise being made to anyone else.

8

*See United States v. Perez*, 227 Fed. App'x 357, 359-60 (5th Cir. May 4, 2007) (evidentiary hearing warranted where a § 2255 movant submitted an affidavit from his wife averring that counsel assured her during at least 10 visits to his office that movant would receive a 24-month sentence, and an affidavit from his wife's sister-in-law averring that she heard counsel tell another attorney in the courtroom before sentencing that the movant would receive a 24-month sentence). The brother's affidavit does not include the same level of specificity regarding a definite promise as in *Perez*.

Movant has failed to overcome the presumption of veracity given to his sworn statements in court, and they reflect that he was not coerced into pleading guilty, that he understood the charge against him, and that he understood the consequences of his guilty plea. His guilty plea was voluntary, and this ground is therefore without merit.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant further asserts in his second ground for relief that counsel was ineffective based on his erroneous advice that he would serve both sentences in federal custody, because as a result of this advice, and after he pled guilty, Movant chose to waive his right to appeal.

As noted earlier, to successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. at 687. To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). The second prong of *Strickland* is not satisfied by mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008,

1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

Because Movant did not plead guilty pursuant to a plea agreement in which he waived his right to appeal, he was initially credited with only a two-level sentencing guideline departure based on his acceptance of responsibility. (*See* PSR ¶¶ 16, 24). After he pled guilty and the PSR was completed, Movant signed a sentencing agreement with the Government wherein he agreed to waive certain appellate rights in exchange for the Government's motion to further reduce his sentence. (doc. 28). As a result, Movant's sentencing guideline lowered from 84 to 105 months to 77 to 96 months, and he was sentenced at the top of the new range. (*See* Addendum to PSR ¶ 95). Movant asserts that he waived his appellate rights only because his attorney once again assured him that he would serve both his state and federal sentences in federal custody, but that he is instead currently serving his state sentence in state custody.

Movant has submitted a letter from his attorney dated almost one year after the plea that recites counsel's understanding of their discussions. It says that counsel told Movant that because he had an unrelated state burglary case pending at the time he pled guilty, the judge would typically order that the federal sentence run consecutive to the state sentence, but that he had the discretion to order that they be served concurrently. Counsel requested a concurrent sentence at the sentencing hearing, but the judge declined to order that the sentences run concurrently. (Mem. Ex. B). This is consistent with the relevant federal sentencing guideline, which gives the judge discretion to order

sentences be served concurrently or consecutively where a federal defendant has an unrelated state parole revocation, but it recommends that the sentences be imposed consecutively. *See* 18 U.S.S.G. § 5G1.3(c), note 3(C) (West 2010).

Counsel's letter also reflects that he told Movant that when a person in federal custody pleads guilty and has an unrelated state case that is ordered to be served consecutively, in his experience, the person has remained in federal custody to serve the federal sentence and is not turned over to the state. If parole is revoked or a state sentence imposed, the sentence is served in federal custody at the same time as the federal sentence. (Mem. Ex. B). Movant appears to agree that he was told this information because he states that counsel told him that "he had tried hundreds of cases and never has he had a client in his years as a Public Defender leave Federal custody under these same circumstances." (Mem. at 6). As counsel's letter explains, however, the United States Marshal has recently changed its policy and now reviews the judgment to determine if a consecutive sentence was ordered. If so, it contacts the other agency to determine if that agency wants custody of the defendant. (Mem. Ex. B).

As reflected in this letter and in Movant's own memorandum, counsel did not promise Movant that he would serve his state sentence in federal custody. He related his experience in similar cases. His description of his experience in past cases does not constitute deficient representation, especially given Movant's statements at rearraignment that he understood the possible range of punishment and understood that the judge, and no one else, would determine his sentence. *See United States v. Mackay*, 2007 WL 700895, *23, 26 (N.D. Tex. Mar. 6, 2007), *citing United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir.1987); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir.1975).

11

Furthermore, Movant has not established prejudice based on his attorney's mistaken belief that Movant would not be transferred to state custody. Movant acknowledges that while he was not happy with the consecutive sentences, he was pleased with the length of the sentence he received. (Mem. at 12). He received this sentence because he pled guilty, which resulted in a two-level reduction in his sentencing guideline, and then subsequently waived his right to appeal, which resulted in an addition one-level reduction in his sentencing guideline. The record reflects that Movant signed the sentencing agreement to lower his potential sentence and was successful in doing so. He has not demonstrated by a preponderance of the evidence that he would have declined to waive his right to appeal, and would have subjected himself to a substantially longer sentence, if his attorney had correctly informed him of the new policy of transferring defendants to state custody. (*See* PSR ¶¶ 9, 10). Movant would have then lost the possibility of a lower sentence, and he has pointed to no non-frivolous claim that he would have raised on direct appeal. Movant's claim of ineffective assistance of trial counsel in the sentencing context should be denied.

## V. EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that movant is entitled to no relief.

## VI. RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED this 28th day of May, 2013.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE